Day Williams for the appellant, Paula Leever. This is a Fair Labor Standards Act case. Paula Leever was a canine officer. Son refuted that she put in 28 hours overtime per week and was not compensated at all for it. This violates the FLSA. All that the city has in defense is a collective bargaining agreement with one sentence in it that she believed was for her on-duty work for the care and feeding of a dog. It does not address overtime as to work with the dog. The collective bargaining agreement does not address hours worked at all. There's extensive case law decided in the brief that if the parties are going to say there's an agreement that exempts the city from the FLSA, there must be some evidence about the hours worked. And in this case, it works out to about nine minutes a day overtime, which is clearly insufficient to compensate her. So when you say it worked out, you're talking about the $60 every two weeks? About $60 every two weeks. It seems to me that 20 hours a day A week. A week. A week. 28 hours a week. Working with a dog must mean that part of it was for the benefit of the keeper of the dog. You don't need to spend 28 hours taking care of a dog. She loved the dog. Sure. And I'll admit it seems high. However, the employer did not meet its burden, the city, to get any evidence as to how much time was actually spent needed as distinct from loving the dog. And I would say the way the city could have met the requirements of 785.23 was to sit down with her union representative and her, find out an average of the number of hours per week, say take a three-month period, and then make notes of that and put that in a collective bargaining agreement. The way it is What does a collective bargaining agreement say? What's the wording? There's only one sentence. Well, it does say you should compensate for overtime. There's a sentence. It says canine officer, an officer permanently assigned to canine duty, shall receive a salary differential of $60 per pay period for the care and feeding of a dog. When we say care and feeding, it also goes to buy food? Dog food, do you know? Yes. And she, the officer, took that as a stipend for on-duty work. Isn't there, there is, maybe quite informal, but there is some kind of study submitted, you know, a comparable, you know, compensation study from other jurisdictions submitted by the city, right, as to what other jurisdictions provide their canine officers by way of additional compensation. Is that right? They did look at that, but there's no evidence that any of these other jurisdictions looked at the number of hours actually spent off-duty caring for the dog. Now, if the, I'm not sure that this provision in the collective bargaining agreement is not explicit enough, but let's say that it isn't. But if it were explicit enough and it were in the collective bargaining agreement, that wouldn't be a violation of the statute, would it? I agree, Your Honor. If they had said, we can't, we can't say the exact number of hours that she works, but based on our study, her average number of hours are X hours, and this is overtime pay at the overtime rate for two hours a day, one hour a day, something like that, but they never went there. They have to go to hours, now they give the use of a car, they give the use of a car, they give the vet bill, they give the food, they give these other things in addition. There's, the rules and regulations and the case law is clear that it has to be actual hours' work. And once the employee has met her BERT, it has to be actual hours' work. Well, didn't the regulation say that that's one of the factors that should be taken into consideration in coming to a reasonable agreement? Right. And that wasn't considered at all. It's not the same as saying it has to be the actual hours' work. In other words, if it's considered by the parties in reaching their agreement, you know, that's one factor to consider in whether it's a reasonable agreement, right? It doesn't have to be necessarily the hours' work. Well. Some people, you know, spend a lot of time, like for instance, as Judge Fletcher says, I'm sure there's people around who say, you know, 20 hours a week is outrageously unreasonable. Even though those are the actual hours' work. So it doesn't have to be the actual hours' work. I agree, but they never went there. There's nothing in the record. I'm just addressing your contention that it has to be the actual hours' work. I agree to the extent, like the boys' home case, some days these people living on site might be their 70 hours, some weeks it might be 50 hours, so they reach an average. But some people could be seven minutes a day, right? That's right. But she's presented an affidavit to the court with detailed duties, saying she worked 28 hours per week and there's nothing from the city. It doesn't matter. What matters is whether the agreement is reasonable. Now, let me ask another question in that regard. Apparently, Ms. Lee was represented by a union, right? And there's a union involved here? That's correct. Does the union contract contain a grievance procedure? I imagine that it does, but I do not know, Your Honor. Well, then you or she didn't try to take this to a grievance through the union with the city? No. The FLSA puts the burden on the employer, not the union, to make sure that employees are properly paid for overtime. Did she ever put in an overtime slip? No, she did not. However, the city admits that it knew that she was putting in time after hours with the dog and the city knew it was compensable. Well, that's why they were giving her $60 every two weeks, right? Well, she took it as a stipend, just in recognition of additional duties on the job. Again, it needs to be explicit in the collective bargaining agreement what it's for, and it's strictly construed against the employer. I'll reserve the rest of my time. Sure. May it please the Court. My name is Mark Forsberg. I'm a Deputy District Attorney for Carson City, Nevada, and I represent the city in this case. I think if there was ever a factual scenario that demonstrates for all of us why CFR 785.23, 29 CFR 785.23 exists, it's this case. That exception was established because of the difficulty, in fact, the impossibility for an employer to determine how much time an employee is working at home. Let's assume that's true, but the question then is, is this a reasonable agreement? Isn't that what it amounts to? I think that is what it amounts to. What supports the reasonableness of $30 a week? Well, the reasonableness is supported as far as the city and the union could determine by the fact that, A, it's part of a collective bargaining agreement that was negotiated between appellants. How many K&N officers are there? There were two at the time. And how many members of the union, or how many people in the bargaining unit? Let me put it that way. There were 75 bargaining unit employees. It's not necessarily true they're going to pay a lot of attention to the interest of two, right? Well, they did, though. The evidence before you shows that they did negotiate. Seven minutes a day. Well, they did negotiate this term, this specific term. They came to the table and negotiated it. We agree. I don't think that's contested. The issue is, is this agreement reasonable? Now, what should we consider in making that determination? Well, I think you consider all the factors that are pertinent. And what are they? The amount of money that was offered, the amount of work that was required. And how much work is required? Is there anything in the record that shows that? We don't know, and we can't find out. If we don't know, then you can't say that's part of the agreement, is it? Because there's no record to show how that was considered in coming to the agreement. That's a minus as far as I'm concerned. Well, what the city did do, though, is they did a very comprehensive. What other factors should we consider? The amount of work required? What else? Other benefits provided. For example, the ability to drive a vehicle home from work. On-duty training that was provided. Are they the only ones that get vehicles? Yes, they are. Nobody else of the 75 gets to drive a vehicle home? That's correct. I'm surprised at that. There are quite a number of... Well, let me say that some of the detectives, my understanding, drive their vehicles home. I'm surprised that they do. That's why I say I would be surprised that nobody else drove their vehicle home. So that's not a benefit that's exclusive to dog handlers, is it? No, it isn't. What other factors? Those were the only things that were provided was the additional stipend that was for this time. But the question is whether seven minutes a day is reasonable and how did you come to that seven minutes? And I'll explain that. What the city did is it did a comprehensive parity study of other jurisdictions to find out... That's a generous characterization of those chicken scratches, isn't it? Possibly generous. But I think if you look at the other dog handler cases that are cited, such as Brock and Rudolph, the amounts of money are not very far different from what was offered here. The package of benefits that was afforded to canine handlers is very similar. And again, there is... What is the range, though, when you talk about the other cases? Well, one, for example, I believe it was Brock, the pay was one day for 28 days. One day's pay for every 28 worked, which I think the court, and I don't remember the exact minute number, but it was a very small number of minutes, 17 minutes per day or something like that. One day for 28 is... All right. Go ahead. But I'd also point out that the times they selected are fictions. They're just numbers that are picked to provide some level of compensation for this extra work because there's no way to determine how much is actually spent. So you have to pick a number, if you want to call it, out of thin air. There is no way to tie it to the actual time because there's no way of determining it. We can't be with... Now, you're contradicting yourself. You know, you said it should be some... You know, you should consider the number of hours we spent, and now you're saying you have to pick it out of thin air. Well, you consider the fact that an employee who has this duty has to do some work at home. We recognize that. We don't dispute it. And we don't dispute that it's compensable. How much time any individual employee is going to spend is beyond our ability to know or determine in any way. So the union comes in. They negotiate a term on behalf of Ms. Lever. We can't talk to Ms. Lever directly. We have to rely on the union under Nevada law and under labor law to bring that to our attention. I think it's... Well, don't you have a... If you're going to handle the matter by negotiation with the union, aren't you... You're still... Statutory scheme? Responsible for being able to demonstrate what's arrived at as a reasonable result? I don't see where the collective bargaining relationship trumps the FLSA scheme. Well, I think that the collective bargaining agreement does trump FLSA in that it brings us within an exception to the overtime rule. We don't have to pay them law enforcement wages for this work. We don't have to pay them overtime for this work because of CFR. 785.23. So instead, we negotiate with the union. They say, this is what we want. There's give and take in this process. And we arrive at a number. I think by the fact that it's negotiated in this way, it's reasonable. We're not... I don't think we should go behind it and start looking into every collective bargaining agreement and every individual who cares for a dog and determining how many hours they actually spend or should have spent or might have spent. We determine a value for this work. Does some legislative history or case law that suggests that the collective bargaining agreement becomes a mediating mechanism for the dissent of business lawyers? I think Brock, the Brock v. Cincinnati case out of the Sixth Circuit does rely directly on the collective bargaining agreement to establish a reasonable agreement between the parties. And incidentally, it was very similar to the one here. Which case was that? Brock v. Cincinnati out of the Sixth Circuit. I want to make a note of that. And another case, Holzapfel v. Newberg out of the Second Circuit, a case where there was no agreement and the court went out of its way to encourage a collective bargaining type agreement to avoid this kind of circumstance. This is the exact problem that we're talking about right now that CFR 785.23 is meant to avoid. It's for us to be in front of a court talking about whether a given employee worked or was suffered to have worked by the employer 15 minutes, an hour, four hours a day. Here, claimed here, four hours every single day, 365 days a year in her home. And so we have an agreement that trumps that claim. I can understand that an agreement to have some evidentiary agreement especially in the form of negotiations on the issue. But certainly that can't foreclose an agreement. If the agreement itself is reasonable, then it does foreclose the need of providing evidence contrary to the agreement. Our agreement says she gets, however you want to calculate it, so many minutes or hours per day expressed as $60 per pay period. When you say the agreement itself is reasonable, doesn't that just shift the question over again to another page with the same theory to be addressed? Well, I think the reasonableness of the agreement doesn't need to go to the specific amount of time spent. It needs to go to all the pertinent factors as were set forth in some of these cases, which are it's not only the hourly rate or the amount of time spent. It's the whole range of things. It's how much can the department afford to pay. It's what other benefits are provided. It's how this particular term fits into the entire collective bargaining agreement. This collective bargaining agreement had provisions for overtime as well, which I think, and I wanted to make this point, belies the assertion by Ms. Lever that she believed that this was simply responsibility pay for her 40 hours. Is this department agreement still in force? A successor agreement is. This one, I think, expired in 1999, and again at that time, this term was renegotiated by the union and the city. Successor agreement is not in the record. It's not because her employment ended before the successor agreement took effect. Speaking hypothetically now, if we were to conclude that the governing agreement here is not a reasonable agreement, what would be the consequence? I think that under those circumstances, the city would not then fall under the exception. The exception? Because the exception says that a reasonable agreement exempts you from the need to pay overtime. So if you were to determine that this agreement is not within a range of agreements that could be found to be reasonable, then we don't have the exemption and we're bound by the overtime provisions. However, given the fact that the appellant never submitted an overtime slip, yet claims that the $60 per pay period was not for time spent at home, where is her follow-through on that argument and an overtime slip somewhere in her career? Thank you very much. All right. Thank you, Mr. Forsberg. Just a few points, Your Honors, in rebuttal. The Brock case is an exception to the other FLSA cases dealing with K-9 employees. And the affirmative defense here is with the city and the burden is on them. And Brock improperly put   It is not a reasonable agreement $7 or $9 per pay period for an employee who works 10 minutes a day. It's not enough time to take care of a dog. There is a way to determine they could have asked. They knew she was doing this work. All the sheriff had to do was ask, or the city could have asked the union rep to find out because all pertinent facts have to be taken into account if you're going to use the exception of 785.23. All right. Did the city pay for the dog food, the vet bills, and the other attendant actual out-of-pocket costs? I am not clear on that. I think they did. That would be my best. I'm sorry, you think who? The city. The city paid for the dog food. All right. Thank you. Thank you. All right. We thank both counsel. This case is submitted for decision. Next case to be argued is Mendoza versus the Immigration and Naturalization Service.
judges: B Fletcher, Tashima, Pollak